JOHN BOUCHARD & SONS CO. *et al. v.* NASHVILLE PROTES-
TANT HOSPITAL.

(*Nashville,* December Term, 1940.)

Opinion filed February 1, 1941.

152

Farmer, Denney & Leftwich, of Nashville, for Nashville Trust Co., receiver.

Walker & Hooker and Wm. C. Sugg, all of Nashville, for Mrs. Sanders.

P. M. Estes, of Nashville, for Life and Casualty Ins. Co.

J. M. Peebles and Joseph Martin, both of Nashville, for Candoro Marble Co.

Mr. Justice DeHaven delivered the opinion of the Court.

The original bill herein was filed as a general creditors' bill against the Nashville Protestant Hospital, and was sustained as such by the chancellor. The Nashville Trust Company was appointed receiver of the hospital.

154

The cause on appeal to the Court of Appeals involved only the claims of the Life & Casualty Insurance Company, the Candoro Marble Company, Mrs. Sarah K. Sanders, individually and as administratrix of the estate of Dr. E. M. Sanders, deceased, and the Nashville Trust Company as receiver of the Protestant Hospital.

Petitions for *certiorari* have been filed to this court by the Life & Casualty Company, the Nashville Trust Company, receiver of the Nashville Protestant Hospital and Mrs. Sarah K. Sanders, as administratrix of the estate of Dr. E. M. Sanders, deceased, and errors are assigned by these respective parties.

The Nashville Protestant Hospital was a corporation organized, not for profit, in the year 1918, under the laws of the State of Tennessee, for the purpose of conducting a hospital in Nashville. In the course of time it accumulated unsecured debts, which were proven in the case, but which were without value, being subject to over $500,000 of prior liens. These liens were as follows:

(1) Indebtedness to Meharry College in the principal sum of $35,000, secured by first mortgage upon the real estate of the hospital. No issue arises on this item.

(2) Trust deed executed January 1, 1919, by the Hospital to the Nashville Trust Company, trustee, to secure an issue of $300,000 of the bonds of the hospital maturing January 1, 1934.

(3) Another trust deed executed February 1, 1930, to secure an issue of $200,000 of bonds, intended for the purpose of equipping the hospital. This item is unimportant for the reason that the realty is not sufficient to pay off the Meharry note and the bond issue of January 1, 1919, and the equipment concerned is of little salable value.

The hospital from its beginning was in financial difficulties. Dr. E. M. Sanders undertook the entire responsibility of the hospital. He was in complete control. By soliciting money from friends, he managed to pay the interest coupons upon the bonds until July 1, 1932. He died June 30, 1932. The bill herein was filed July 8, 1932.

(1) The Life & Casualty Insurance Company issued three policies of insurance on the life of Dr. E. M. Sanders, payable to his estate, in the amounts of $10,000, $5,000, and $5,000, respectively. The Insurance Company did not deny its liability for the payment of the insurance. The Insurance Company was the owner and holder of $64,000 of the bonds of the hospital issued January 1, 1919. By its petition filed in the case, it asserted that it was entitled to set-off the $64,000 of bonds against its liability upon the three insurance policies. It was further insisted that in the event it should be held that the hospital was not entitled to this insurance, that the sale of the bonds to it was made by Dr. Sanders for the hospital and Dr. Sanders personally guaranteed their payment, and in as much as they have not been paid, petitioner is entitled to set-off these bonds against any liability to Dr. Sanders' estate. The guarantee referred to was in writing, of date of November 7, 1927, and signed by (Dr.) E. M. Sanders. The policies were issued December 1, 1927.

The chancellor was of the opinion, and so decreed, that the Insurance Company had no right to set-off against the proceeds of the three insurance policies the 64 mortgage bonds purchased by it from Dr. Sanders and awarded judgment on the three policies in favor of the receiver for $20,000, together with interest thereon from August 17, 1932, in the sum of $7,820, for the benefit

of the parties entitled to the proceeds of the insurance as thereinafter stated in the decree. The chancellor rendered no decree on the bonds against Dr. Sanders' estate and the Insurance Company did not assign error as to this in the Court of Appeals. In fact, the Insurance Company did not by its pleadings seek a judgment against Dr. Sanders' estate; but did in its answer to the cross-bill filed against it and others by Mrs. Sarah K. Sanders, administratrix, assert that if it was mistaken as to its rights of set-off, it would have the right, both as to the Hospital and the administratrix to have the deed of trust foreclosed and it be ascertained whether there would be sufficient funds on hand to pay the 64 bonds, with interest, before it should be required that it pay the insurance; that when these steps have been taken, and when it does result that there is a deficiency in the payment of the 64 bonds, "then it pleads that deficiency as a set-off against any claims either of Mrs. Sarah K. Sanders, Administratrix, or the Protestant Hospital, or the Nashville Trust Company, as Trustee or Receiver in this case, or any of their assigns." The Insurance Company, however, did not plead or rely on set-off against Dr. Sanders' estate on the ground of the insolvency of the estate, and no issue was raised by the Insurance Company as to the insolvency of his estate. Equitable set-off must be specially pleaded. Gibson's Suits in Chancery, sec. 334. And can be allowed only on affirmative pleading, by original bill or cross-bill, and not by way of answer. *American Nat. Bank* v. *Nashville Warehouse, etc., Co.,* Tenn. Ch., 36 S. W., 960; *Meek* v. *McCormick,* Tenn. Ch., 42 S. W., 458; *Kittrell* v. *German Fire Ins. Co.,* 1 Tenn. Civ. App. (1 Higgins), 253.

One witness testified that Dr. Sanders owned about $180 in cash and about $30,000 of hospital bonds and un-

collected accounts when he died. Nothing is said about real estate, or the insolvency of his estate. It was not shown that his estate was insolvent in fact. The Insurance Company did not aver by cross-bill any grounds for equitable set-off, either insolvency or anything else, as against the estate of Dr. Sanders.

The Court of Appeals affirmed the decree of the chancellor in disallowing the Insurance Company's claim of set-off as to either the hospital or Sanders' estate.

Under its first assignment of error the Insurance Company complains of the action of the Court of Appeals in denying it the right to set-off the $64,000 of bonds against any liability to the hospital or its receiver on account of the $20,000 of life insurance on the life of Dr. Sanders.

Dr. Sanders assigned the three policies in question, when issued, to the hospital, as creditor, on the forms of assignment used when a policy is pledged for indebtedness.

The contention of the Insurance Company is, in substance, (1) that it has the right of set-off by virtue of the provisions of the policies themselves; (2) That independently of the policy provisions, the right of set-off arises because of the insolvency of the Hospital. The weight of authority is that an independent indebtedness is not embraced within the general provision of a policy authorizing a deduction of any indebtedness to the company. *Anson* v. *New York Life Ins. Co.*, 252 Ill., 369, 96 N. E., 846, 37 L. R. A. (N. S.), 555; *McKown* v. *Manhattan Life Ins. Co.* (C. C.), 91 F., 352. It was held otherwise in *Citizens' Nat. Life Ins. Co.* v. *Rutherford,* 157 Ky., 820, 164 S. W., 107.

The provisions with respect to the deduction of indebtedness are found in several places in the policies. It is provided the company will pay the amount of the

policy to the executors, administrators or assigns of the insured, "less any indebtedness due the company." With respect to nonforfeiture and cash loan provisions it is provided, "Any indebtedness to the company under this policy will be deducted," etc. Construing the policy as a whole it seems that the clause "any indebtedness due the company" is to be restricted to any indebtedness arising under or pertaining to the policy itself. Indebtedness due the company could arise from a policy loan, or premium loan, such loans being provided for in the policy.

It is insisted by the company that when these policies were issued, it was stated in the application that they were for "bequest insurance for Protestant Hospital"; but Dr. Sanders named as beneficiary his estate and not the Hospital. The assignments of the policies were to the Hospital as creditor, "as its interest might appear." If Dr. Sanders was not indebted to the Hospital at the time of his death, as was held by the Court of Appeals (and hereinafter discussed) then the assignments were *functus officio* and the Hospital and its receiver have no claim whatever to the proceeds of the policies by or under the assignments.

The contention made by the Insurance Company that independently of the policy provisions, the right of set-off arises because of the insolvency of the Hospital must rest primarily on the assumption that the assignments were still in full force and effect at the time of the death of Dr. Sanders, or that Dr. Sanders had dedicated the policies to the payment of the bonds held by the Insurance Company. The chancellor ordered a reference to a Special Commissioner. The Insurance Company insisted before the Commissioner that the policies were taken out for its specific benefit and that it was agreed that the policies would be security for the

payment of the bonds purchased by the Insurance Company. The Commissioner found that this insistence was not sustained by the proof. The Chancellor overruled the exceptions of the Insurance Company to Commissioner's report and confirmed it without modification. The concurrent finding of the Commissioner and Chancellor on this point is conclusive.

It is next complained that the Court of Appeals erred in denying to the Insurance Company the right to set-off its $64,000 of Hospital bonds to the estate of Dr. Sanders. As hereinbefore pointed out, the right to such set-off was not conferred by any stipulation in the contracts of insurance, nor by any agreement had with Dr. Sanders—as found by the Commissioner and the Chancellor. Not only so, but the Insurance Company by neither bill nor cross-bill sought equitable set-off against the estate of Dr. Sanders based on its insolvency or on any other ground. Such relief cannot be had on answer only. (See authorities heretofore cited.)

Passing to a consideration of the petition of the Nashville Trust Company, receiver, for *certiorari*. The one question made is with reference to the correctness of the holding of the Court of Appeals to the effect that the burden of proof was upon the receiver to show what moneys of the Hospital Dr. Sanders received and should be charged with. The Court of Appeals found that for the period January 1, 1930, to June 27, 1932, had a settlement been made, Dr. Sanders would have been entitled to a credit of $31,141.29; that for the period prior to January 1, 1930, it is impossible to determine whether Dr. Sanders was indebted to the Hospital on that date, or the Hospital indebted to Dr. Sanders. The Commissioner found that for the period January 1, 1930-June 27, 1932, Dr. Sanders was indebted to the Hospital in the

sum of $11,070.22; but found that it was impossible to state an account for the years 1919 to 1930. The Court of Appeals found that there was no evidence to support the finding that Dr. Sanders was indebted in the sum of $11,070.22 to the Hospital for the period 1930-1932. However that may be, it is certain that no complete statement of the indebtedness of Dr. Sanders to the Hospital or of the Hospital to Sanders can be cast, unless the whole period of time from 1919 to 1932, be considered. The Commissioner recites in his report that the auditor employed by the receiver testified that for the period prior to 1930, the records of the Hospital were in such condition as to be "practically worthless so far as making any reasonable audit."

The assignment of the policies to the Hospital, in consideration of "One Dollar and other valuable consideration," attached as "riders" on the policies, were "as its interest may appear." Undoubtedly, we think, that it was incumbent on the Hospital, or its receiver, to establish what that interest was. Unless it could establish an interest, then it took nothing under the assignment. Not having proven an interest, the Hospital took nothing under the assignment.

It seems true that the employees of the Hospital were under the direction of Dr. Sanders. If it be assumed that it was his failure to require proper records to be kept by the Hospital, so that it is now impossible to determine what amount of Hospital funds he is chargeable with, and that such failure was a breach of duty which he owed to the hospital, nevertheless, the proceeds of the insurance policies not having been specifically set apart by the insured for the payment of his debts, is exempt to the widow. Code, section 8456. There is no claim made that the insurance was bought and paid for

by the insured with money abstracted from the Hospital. Hence no sort of trust arose with respect to the insurance. The widow, Mrs. Sanders, takes the insurance under the statute and her rights thereto cannot be prejudiced by the manner that the insured, Dr. Sanders, handled the affairs of the Hospital, or by his negligence in failing to see that the books of the Hospital were properly kept.

The Court of Appeals was not in error in awarding a decree in favor of Mrs. Sanders and against the Insurance Company and the surety on its appeal bond for $18,355.95 with interest from July 1, 1932, to date. This amount represented the $20,000 of insurance money, less $1,644.05 to be paid the Candoro Marble Company.

Passing to the petition for *certiorari* filed by Mrs. Sarah K. Sanders, administratrix, the questions made by the assignments of error were treated in great detail by the Court of Appeals in its opinion filed in the case. We have reviewed these findings and find them well supported by the record and applicable law and adopt them as though fully set out herein.

The result is that all three of the petitions for *certiorari* must be denied.